# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>1052 DOUTY HILL ROAD, SANGERVILLE, MAINE, with all appurtenances and improvements thereon,<br><br>        Defendant *In Rem*. | No. 1:24-cv- |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, by and through its attorneys, Darcie N. McElwee, United States Attorney for the District of Maine, and Andrew K. Lizotte, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.  This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(7) and 28 U.S.C. § 2461(a), which provide for the forfeiture of real property[1] used to commit or to facilitate the commission of the crimes of maintaining a drug-involved premises and drug trafficking, in violation of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*.

## JURISDICTION AND VENUE

2.  This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. §§ 1355(a) and (b). Venue is proper in this district: (a) pursuant to 28 U.S.C. §

---

[1] To include "any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements." 21 U.S.C. § 881(a)(7).

1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this district; and (b) pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b), because the property is located in this district.

## THE DEFENDANT *IN REM*

3. The defendant *in rem* is real property located at the following Maine address, and is more particularly described in municipal tax records by reference to the map/lot number or parcel ID reflected below and the deed on file at the book/page reflected below at the Piscataquis County Registry of Deeds:

| Address | City/Town | Owner of Record | Map/Lot or Parcel ID | Deed Book/Page |
|---|---|---|---|---|
| 1052 Douty Hill Rd. | Sangerville | ALFINITY CAPITAL HOLDINGS, L.L.C. | 012/016 | 2793/75 |

4. The defendant *in rem* property's owner of record is associated with the following individual:

| Owner of Record | Associated Person | Titles | Source |
|---|---|---|---|
| ALFINITY CAPITAL HOLDINGS, L.L.C. | ALVIN CHEN | Authorized Person & Registered Agent | Maryland State Department of Assessments & Taxation |

5. Upon information and belief, YING CHEN was a tenant and lessee of the defendant *in rem* property for a term from about April 24, 2021, through about April 24, 2024.

## STATEMENT OF PROBABLE CAUSE

6. The U.S. Drug Enforcement Administration ("DEA") is investigating the defendant *in rem* real property located at 1052 Douty Hill Road, in Sangerville, for being

a marijuana-involved premises in violation of 21 U.S.C. § 856(a) and for the related illegal cultivation of marijuana for distribution in violation of 21 U.S.C. § 841(a)(1). The defendant *in rem* real property has been confirmed by the Maine Office of Cannabis Policy as lacking any licensed status under which marijuana could be legally cultivated at or on such premises under Maine state law.

7. Provided below is a photograph of the defendant *in rem* real property available on a commonly used real estate website,[2] which accurately shows the general condition and proportions of the property, with the exception of a small outbuilding more recently constructed to the east of the two-bay garage (not pictured):



8. The warranty deed for the defendant *in rem* real property recorded with the Piscataquis County Register of Deeds shows that on February 15, 2021, the real property was granted to ALVIN CHEN, of Berlin, Maryland. Piscataquis County Register

---

[2] *See* https://www.realtor.com/realestateandhomes-detail/1052-Douty-Hill-Rd_Sangerville_ME_04479_M49514-47989.

of Deeds records further show that on August 11, 2021, ALVIN CHEN granted the property by quitclaim deed to ALFINITY CAPITAL HOLDINGS, L.L.C., a Maryland business entity with the same mailing address as ALVIN CHEN. Corporate records for ALFINITY CAPITAL HOLDINGS, L.L.C. were obtained from the Maryland State Department of Assessments & Taxation. These corporate records show that ALFINITY CAPITAL HOLDINGS, L.L.C. was formed on February 5, 2021, and that the entity's sole authorized person was ALVIN CHEN.

9. A January 31, 2021, copy of the Purchase and Sales Agreement for the defendant *in rem* real property shows that the agreement was DocuSigned by ALVIN CHEN. The closed sale price of the defendant *in rem* real property was $130,000 cash.[3]

10. Electrical usage data provided by Central Maine Power ("CMP") for the defendant *in rem* real property shows that ALVIN CHEN became a holder of a CMP account for the property for the single month of February 2021. The CMP records show that YING CHEN then became a holder of a CMP account for the property in March 2021, became a holder of another account for the property in June 2021, and remained the holder of both accounts through April 2024. The following combined usage data is shown for YING CHEN's two accounts with CMP:

| Month & Year | Power Usage (kWh) |
| --- | --- |
| March 2021 | 2,905 |
| April 2021 | 5,684 |
| May 2021 | 6,786 |
| June 2021 | 5,358 |

---

[3] Email correspondence provided by the closing agent indicates that ALVIN CHEN transferred the defendant *in rem* real property to ALFINITY CAPITAL HOLDINGS, L.L.C., which ALVIN CHEN described in an emailed dated March 31, 2021, as "my LLC."

| | |
|---|---|
| July 2021 | 1,543 |
| August 2021 | 22,718 |
| September 2021 | 20,634 |
| October 2021 | 21,374 |
| November 2021 | 18,161 |
| December 2021 | 20,349 |
| January 2022 | 24,667 |
| February 2022 | 25,326 |
| March 2022 | 21,310 |
| April 2022 | 25,395 |
| May 2022 | 20,493 |
| June 2022 | 24,401 |
| July 2022 | 25,965 |
| August 2022 | 24,313 |
| September 2022 | 22,816 |
| October 2022 | 23,725 |
| November 2022 | 21,399 |
| December 2022 | 20,019 |
| January 2023 | 22,572 |
| February 2023 | 21,502 |
| March 2023 | 17,953 |
| April 2023 | 21,832 |
| May 2023 | 15,880 |
| June 2023 | 17,527 |
| July 2023 | 21,434 |
| August 2023 | 18,590 |
| September 2023 | 22,287 |
| October 2023 | 22,221 |
| November 2023 | 19,613 |
| December 2023 | 21,340 |
| January 2024 | 25,062 |
| February 2024 | 23,171 |
| March 2024 | 22,359 |
| April 2024 | 21,921 |

Large amounts of electrical power are needed in support of indoor marijuana cultivation, due to the use of artificial lighting, heat pumps, distribution fans, air conditioners and humidifiers. The electrical consumption, as detailed above, is consistent with large-scale illegal marijuana cultivation. For comparison, according to the Energy Information Administration, the average U.S. household consumes about 10,500 kilowatthours of electricity per year (https://www.eia.gov/energyexplained/use-

of-energy/electricity-use-in-homes.php), or roughly 875 kilowatthours per month

11. The Piscataquis County Sheriff's Office ("PCSO") secured a state search warrant for the defendant *in rem* real property, which was executed on April 25, 2024.

12. YING CHEN was located and identified by PCSO personnel in the garage on the property at the outset of the search warrant that day. The garage was revealed to be a large marijuana growing operation. Several other grow rooms were identified by PCSO personnel as they checked throughout the premises and other outbuildings for additional individuals. An additional outbuilding, a shed, had been converted into a drying and processing room for the marijuana.

13. In the downstairs portion of the home were several grow rooms containing marijuana in various stages of growth, similar to the garage. Each grow room was installed with grow lights, and was supported by extensive electrical wiring and hydroponics systems. In the upstairs of the house there was a bedroom located with a full size bed, along with men's and women's belongings in the same room. In the bedroom there were miscellaneous items scattered about, including a wallet with identification for YING CHEN.

14. There were approximately 1,972 marijuana plants counted on the property, including 727 mature flowering plants. Additionally, in the shed behind the residence there was drying marijuana, as referenced above. The buds of the drying plants were stripped and transported in tote bags to the PCSO's offices, where the marijuana buds were found to weigh approximately 26 pounds.

15. YING CHEN was transported by PCSO personnel to the Dover-Foxcroft Police Department and interviewed post-*Miranda*, via a remote Chinese translation

service contracted though Homeland Security Investigations.

16. YING CHEN made statements including the following, in sum and substance:

 a. She had been in Maine for three years, living at the defendant *in rem* real property, occasionally travelling down to stay in New York. YING CHEN's oldest son owned the home and rented it to her. However, she would not share the name of her oldest son.

 b. YING CHEN admitted to growing marijuana at the defendant *in rem* real property for those three years. YING CHEN admitted to growing as much as thirty pounds of marijuana in a given harvest cycle.

 c. Once she grew and processed the marijuana, YING CHEN would sell it to different individuals. YING CHEN sold the marijuana approximately once each month. Some of the proceeds of her marijuana sales were used to pay her living expenses and the utilities on the defendant *in rem* real property.

17. PCSO personnel seized various items at the defendant *in rem* real property, including the following:

 a. A residential lease agreement dated February 21, 2021, between ALVIN CHEN as landlord and YING CHEN as tenant to rent the defendant *in rem* real property.

 b. A residential lease agreement dated April 24, 2021, between ALFINITY CAPITAL HOLDINGS L.L.C. as landlord and YING CHEN as tenant to rent the defendant *in rem* real property, for a lease term through April 24, 2024.

      c. January, February, and March 2024 statements for an East West Bank account in YING CHEN's name. The account statements showed point of sale transactions in Dover-Foxcroft, Corinna, Waterville, and Augusta, debits to Starlink Internet and Spectrum, and payments made to ALVIN CHEN.

      d. Grow room diagrams, ledger entries, and handwritten phone numbers.

18. In addition, PCSO personnel at the defendant *in rem* real property located a copy of a New York City-issued birth certificate for ALVIN CHEN, showing ALVIN CHEN's mother to be YING CHEN. Also found was a handwritten note showing ALVIN CHEN's phone number, as well as copies of 2019 Forms W-2 and 1040 income tax returns for ALVIN CHEN.

19. Financial records for accounts in ALVIN CHEN's name further show: (i) an $8,000 check dated February 4, 2021, written to ALVIN CHEN from an East West Bank account in YING CHEN's name; (ii) a $1,000 check dated February 6, 2021, written to ALVIN CHEN from an East West Bank account in YING CHEN's name; (iii) a $3,000 check dated February 6, 2021, written to ALVIN CHEN from an East West Bank account in YING CHEN's name; (iv) and a $1,200 check dated April 16, 2021, written to ALVIN CHEN from an East West Bank account in YING CHEN's name.

20. Therefore, ALFINITY CAPITAL HOLDINGS, L.L.C., ALVIN CHEN, YING CHEEN, and others operated an illegal marijuana grow at and within the defendant *in rem* real property located at 1052 Douty Hill Road, in Sangerville. The defendant *in rem* real property was knowingly opened, leased, rented, used and maintained for the purpose of manufacturing and distributing marijuana. ALVIN CHEN further managed

and controlled the defendant *in rem* property as an owner and knowingly and intentionally rented, leased, profited from, and made available for use the defendant *in rem* real property for the purpose of unlawfully manufacturing, storing, and distributing marijuana. The defendant *in rem* real property was also used, or intended to be used, to commit or to facilitate the commission of drug trafficking.

## BASIS FOR FORFEITURE

21. 21 U.S.C. § 881(a)(7): provides for the forfeiture of real property used, or intended to be used, in any manner or part to commit or to facilitate the commission of the crimes of maintaining a drug-involved premises and drug trafficking, in violation of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*.

22. 28 U.S.C. § 2461: allows for the civil forfeiture of forfeitable property.

## CONCLUSION

23. The United States does not request authority from the Court to seize the defendant *in rem* at this time. The United States will, as provided by 18 U.S.C. §§ 985(b)(1) and (c)(1):

    a. Post notice of this action and a copy of the Complaint on the defendant *in rem* property;

    b. Serve notice of this action on the defendant *in rem* property's owner, and any other person or entity who may claim an interest in the defendant *in rem* property, along with a copy of this Complaint;

    c. Seek issuance by the Court and execution of a writ of entry for the purpose of conducting an inspection and inventory of the defendant *in rem* property, as permitted by 18 U.S.C. §§ 985(b)(2) and 983(j)(1); and

   d. File a *lis pendens* in county records of the defendant *in rem* property's status as a defendant in this *in rem* action, as permitted by 18 U.S.C. § 985(b)(2).

WHEREFORE, the plaintiff respectfully asserts that there is probable cause to believe that the defendant *in rem* property is forfeitable to the United States under 21 U.S.C. § 881(a)(7) and 28 U.S.C. § 2461 and requests:

   a. That the Court decree that the forfeiture of the defendant *in rem* property to the United States under 21 U.S.C. § 881(a)(7) and 28 U.S.C. § 2461 is confirmed, enforced, and ordered;

   b. That the Court thereafter order that the United States Marshal, or his delegate or designee, dispose of the defendant *in rem* property as provided by law; and

   c. That the Court award Plaintiff United States all other relief to which it is entitled, including the costs of this action.

Dated at Bangor, Maine this 27th day of August, 2024.

                 Respectfully submitted,

                 DARCIE N. MCELWEE
                 United States Attorney

                 /s/ ANDREW K. LIZOTTE
                 Andrew K. Lizotte
                 Assistant U.S. Attorney
                 United States Attorney's Office
                 202 Harlow Street
                 Bangor, Maine 04401
                 (207) 262-4636
                 Andrew.Lizotte@usdoj.gov

## VERIFICATION

Jonathan Richards, being duly sworn, deposes and says that I am a Task Force Officer with the U.S. Drug Enforcement Administration and as such have responsibility for the within action, that I have read the foregoing complaint and know the contents thereof, and that the same is true to the best of my knowledge, information and belief.

The sources of my information and the grounds of my belief are official records and files of the United States and information obtained by me during an investigation of alleged violations of Title 21 of the United States Code.

 /s/ Jonathan Richards
Jonathan Richards
Task Force Officer
U.S. Drug Enforcement Administration

STATE OF MAINE
Penobscot, ss.

Subscribed and sworn to before me this 25th day of July 2024.

/s/ Tamara T. Redmond
Notary Public
My commission expires: 09/16/2025